645 So.2d 213 (1994)
STATE of Louisiana, Appellee,
v.
Ronnie Lee FAIRLEY, Appellant.
No. 25951-KA.
Court of Appeal of Louisiana, Second Circuit.
May 4, 1994.
Opinion on Rehearing October 28, 1994.
Writ Denied November 11, 1994.
*215 Sanford and Lilly by Roy M. Lilly, Jr., Baton Rouge, for appellant.
Richard Ieyoub, Atty. Gen., Walter E. May, Jr., Dist. Atty., C. Glenn Fallin, Asst. Dist. Atty., for appellee.
Before SEXTON and VICTORY, JJ., and LOWE, J. Pro Tem.
SEXTON, Judge.
Defendant, Ronnie Lee Fairley, was tried on two counts of distribution of cocaine in violation of LSA-R.S. 40:967(A). A jury convicted him on only one count, and the trial court imposed a sentence of 17 and one-half years. Defendant appeals only his conviction, urging that the statute under which he was convicted is unconstitutionally vague and insufficient evidence to convict, and protesting the trial court's ruling on challenges to five jurors. Finding merit to defendant's claim relating to one requested jury challenge, we reverse defendant's conviction and remand for a new trial.

FACTS
In July of 1992, defendant worked with an undercover agent at Hunt Lumber Company in Castor, Louisiana, in Bienville Parish. The two worked side by side and engaged in conversations regarding the purchase of crack and "rock prostitutes." Defendant volunteered that he knew where to get crack and indicated that if the undercover agent would follow him that he would sell rock cocaine to the undercover agent. At work, on July 30, 1992, the undercover agent gave defendant $80 for the purchase of crack cocaine. Later that evening, defendant delivered four off-white rocks, appearing to be crack cocaine, to the undercover agent. The undercover agent then transferred these substances to officials of the Bienville Parish Sheriff's Office. On August 7, 1992, once again at work, defendant informed the undercover agent that "the man with the dope had arrived" and inquired of the undercover agent how much he wanted to buy. The undercover agent informed that he desired $100 worth. Defendant then left the table where the two were seated, but returned a few minutes later. Defendant went to a water fountain and placed something from his pocket into a cone cup. Defendant then approached the undercover agent and asked for the money. Afterwards, he informed the undercover agent that the crack cocaine was in the cone cup. The undercover agent secured the cup and the cocaine. The substance was once again given to a representative of the Bienville Parish Sheriff's Office. Laboratory analysis confirmed the presence of cocaine. Defendant was charged with two counts of distribution of cocaine in violation of LSA-R.S. 40:967(A) and was convicted by jury on only one of those two counts. He appeals his conviction.

DISCUSSION
Plaintiff originally asserted nine assignments of error. Only five are briefed. Accordingly, the remainder are considered abandoned. State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App.2d Cir.1989), writ denied, 558 So.2d 1123 (La.1990); URCA Rule 2-12.4.

Assignment of Error No. 1

SUFFICIENCY OF EVIDENCE
Although we remand this matter to the trial court for a new trial, it is appropriate *216 that we first address defendant's sufficiency of evidence claim. State v. Hearold, 603 So.2d 731 (La.1992). In Assignment of Error No. 1, defendant asserts that the totality of the evidence, when considered in the light most favorable to the state, does not support a conviction of any responsive verdict under LSA-R.S. 40:961(9) and LSA-R.S. 40:961(13).
After viewing the evidence presented in the light most favorable to the state, we find that there was sufficient evidence to support defendant's conviction for distribution of cocaine. The crime of distribution is the knowing and intentional distribution of a controlled dangerous substance. State v. Seay, 521 So.2d 1206 (La.App.2d Cir.1988). The testimony of a single undercover agent is sufficient to convict a defendant charged with drug distribution. State v. Daniels, 607 So.2d 620 (La.App.2d Cir.1992). In this case, the testimony and evidence amply supports defendant's conviction on one count of distribution of cocaine. Defendant's argument lacks merit.

Assignment of Error No. 7

CHALLENGE OF JURORS WALKER AND MYERS
In this assignment of error, defendant asserts that the district court erred, as a matter of law, in failing to excuse three jurors. Because we find merit to this assignment of error as it relates to juror Walker, we address it first, along with juror Johnny Myers, and omit discussion relevant to juror Roger Blewer.
A defendant who has used all of his peremptory challenges is entitled to complain of any alleged error in denying challenges for cause. State v. Heard, 408 So.2d 1247 (La.1982). The trial judge is vested with broad discretion in ruling on a challenge for cause and his ruling will not be disturbed on appeal absent a showing of abuse of discretion or a clear showing of error. State v. Sugar, 408 So.2d 1329 (La.1982). If a prospective juror is able, after examination by defense counsel, to declare to the court's reasonable satisfaction that they are able to render an impartial verdict according to the law and the evidence, it would be the trial court's duty to deny a challenge for cause. State v. Claiborne, 397 So.2d 486 (La.1981). The law is clear that a relationship between the prospective juror and the participants is not necessarily a disqualifying fact. The existence of a relationship, even one of blood or marriage, is not sufficient to disqualify a juror unless it is shown that the relationship is sufficient to preclude the juror from arriving at a fair verdict. State v. Peterson, 446 So.2d 815 (La.App.2d Cir.1984). The law does not require that a jury be composed of individuals who are totally unacquainted with the defendant, the prosecuting witness, the prosecuting attorney, and the witnesses who may testify at trial. It requires that jurors be fair and unbiased. State v. Shelton, 377 So.2d 96 (La.1979). A prospective juror's statement that he will be fair and impartial is not binding on the trial court. If the revealed details of the relationship are such that bias or prejudice may be reasonably implied, a juror may be properly refused for cause. State v. Lewis, 391 So.2d 1156 (La. 1980).
Defendant argues error in the failure to grant his challenge for cause relating to this prospective juror in light of her acquaintance and relationship with assistant district attorney Fallin. Walker said that she worked for assistant district attorney Fallin for several years, as his babysitter. Upon questioning by the court, she revealed that she works for Fallin four days a week and sees him each morning. She also stated that she knew assistant district attorney Fallin's secretary. Upon further inquiry, she agreed to follow the law as instructed, which included an instruction that she could not hold it against the defendant if he decided not to testify. The court determined that juror Walker understood the legal principles and denied the defendant's challenge for cause.
Although Ms. Walker indicated that she would follow the law as instructed, certain facts are apparent or implied from her relationship with the assistant district attorney. She works in his home practically every day and at least a significant portion of her livelihood depends upon Fallin. Her job allows her to be a part of the everyday activities of the Fallin family due to the nature of her *217 employment which involves a very personal part of the prosecutor's life. Because of the extensive contact that the babysitter has with a family and the amount of time that she has been in the service of assistant district attorney Fallin, it is not unreasonable to conclude that juror Walker is very close to the Fallin family, much like a relative.
In State v. Lewis, supra, the Louisiana Supreme Court reversed a conviction and remanded after finding that a challenge for cause should have been sustained against a prospective juror who had worked for the district attorney's office and had later applied for a job there after graduating from law school. There, the court, citing State v. Monroe, 366 So.2d 1345 (La.1978), noted that "a prospective juror's statement that he will be fair and impartial is not binding on the trial court. If the revealed details of the relationship are such that bias or prejudice may be reasonably implied, a juror may be properly refused for cause."
In State v. Monroe, supra, the Louisiana Supreme Court also reversed a conviction finding that it was reasonable to conclude that a prospective juror who, at the time of trial, was employed as an assistant district attorney assigned to the Career Criminal Bureau, although in the same office as the assistant district attorneys who were trying the case, would influence the jury in arriving at a verdict. The prospective juror knew nothing about the case and testified that he would be fair and impartial.
We find this case closely analogous to the cases mentioned above. Although Ms. Walker stated that she could be fair and impartial, we believe that the relationship as it exists between the prosecuting attorney and his babysitter including the nature of the employment is such that it is reasonable to conclude that this relationship would influence the juror in arriving at a verdict.
Moreover, although we reverse based upon the denial of the requested challenge for cause of prospective juror Walker, we in addition note concern as to the denial of the challenge for cause relating to prospective juror Myers. He stated that he was first cousin to assistant district attorney Myers, who was assisting in this prosecution, and that he was utilizing the services of assistant district attorney Fallin's law firm on another matter. Although very little of the nature of the relationship between the cousins was elicited during further questioning, and although juror Myers, like juror Walker, stated that he could be fair and impartial, such a relationship between the prospective juror and the assistant district attorney raises a serious question as to the propriety of Myers' service on this jury. State v. Lewis, supra; State v. Monroe, supra.

Assignment of Error No. 9

CONSTITUTIONALITY OF STATUTE
Because we remand this matter to the trial court for a new trial, it is appropriate that we address defendant's constitutional claims relating to the statute under which he was charged. In Assignment of Error No. 9, defendant asserts that the law under which he was convicted is so vague and all inclusive that it is unconstitutional under both state and federal law.
Defendant's argument is grounded in the proposition that the definition of "distribute" contained in LSA-R.S. 40:961(13) outlaws only deliveries made "pursuant to the lawful order of a practitioner." To read the statute otherwise, he argues, renders its provisions unconstitutionally vague. Specifically, that provision reads as follows:
"Distribute" means to deliver a controlled dangerous substance whether by physical delivery, administering, subterfuge, furnishing a prescription, or by filling, packaging, labeling or compounding the substance pursuant to the lawful order of a practitioner....
LSA-R.S. 40:961(9) defines deliver and states:
"Deliver" or "delivery" means the transfer of a controlled dangerous substance whether or not there exists an agency relationship.
Defendant argues that the phrase "pursuant to the lawful order of a practitioner" modifies every type of activity listed in the definition of distribution, and therefore that proof that a defendant acted pursuant to *218 such an order is an element of the crime of distribution. Because there has been no proof in this case that any of defendant's actions were conducted pursuant to a lawful order of a practitioner, defendant asserts that his conviction is in error. His argument further suggests that to read the definition of "distribute" without the above modification, in effect, makes any delivery illegal under the definition of distribution. Therefore, any lab technician, clerk of court, district attorney, or sheriff's deputy would be guilty of the crime of distribution when any transfer of cocaine was made. He suggests that this does not occur for two reasons. Either the district attorney is allowed under this statute to decide who the "bad" distributors are, or they are not guilty because they do not conduct the transfer "pursuant to a lawful order of a practitioner." Therefore he urges that the logical conclusion to be reached is that the phrase "pursuant to a lawful order of a practitioner" modifies all activity listed under the statute. To read the statute without this modification, he argues, fails to put a person of ordinary intelligence on reasonable notice that he is committing criminal activity in violation of both the state and federal constitutions.
Courts should construe statutes to give them the meaning intended by the legislature and to avoid absurd results. Lopez v. City of Shreveport, 449 So.2d 1184 (La.App.2d Cir. 1984), writ denied, 452 So.2d 175 (La.1984), reconsideration not considered, 456 So.2d 161 (La.1984). In this case, we find that a clear reading of the statute shows that the phrase "pursuant to a lawful order of a practitioner" modifies only those activities following the first use of the word "or" in the definition of distribute. The use of "or" demonstrates an intent on the part of the legislature to separate the types of activity. This conclusion is further supported when viewed in light of the type of examples listed in the second phrase of the statute which are clearly linked to activities associated with the use of a prescription (i.e., filling, packaging, labeling or compounding). Accordingly, defendant's argument lacks merit.
Further, we do not find merit in defendant's assertions that if the statute is read without the above modification, it becomes unconstitutionally vague, failing to place an individual on notice as to what constitutes criminal activity. It has been held that the definitions of both "distribute" and "deliver" are not unconstitutionally vague. State v. Martin, 310 So.2d 544 (La.1975); State v. Brown, 288 So.2d 339 (La.1974). Therefore, this argument likewise lacks merit.

CONCLUSION
Based upon the foregoing, we reverse defendant's conviction and remand this matter to the trial court for a new trial. We find no merit to defendant's claim of insufficiency of the evidence nor the unconstitutionality of LSA-R.S. 40:961(9) and (13). Because we reverse defendant's conviction, it is unnecessary that we address defendant's remaining assignments of error relating to jury challenges.
CONVICTION REVERSED; REMANDED FOR NEW TRIAL.
Before SEXTON, NORRIS, VICTORY and WILLIAMS, JJ., and LOWE, J. Pro Tem.

ON REHEARING
SEXTON, Judge.
In his original appeal to this court, Ronnie Lee Fairley complained of the erroneous denial of his challenges for cause to three jurors. This court found merit in one of these alleged errors and reversed Fairley's conviction. The state applied for a rehearing based upon the defendant's alleged failure to properly object as required by LSA-C.Cr.P. Art. 800. In the alternative, the state asserts that any error was harmless in light of the fact that Mrs. Walker did not serve on the jury. We granted a rehearing in this case to address these specific issues.
Defendants may always assign as error the trial court's failure to dismiss a potential juror for cause urged by defendant when 1) that denial is erroneous and 2) defendant objected to the failure to dismiss at trial. However, if a defendant has not used all of his peremptory challenges before completion of the jury pool and assigns as error *219 the failure to dismiss, he must further demonstrate that he has been prejudiced by this failure. LSA-C.Cr.P. Art. 921; State v. Robertson, 630 So.2d 1278 (La.1994).
On the other hand, if the defendant has used all of his peremptory challenges, he need not show prejudice to have his conviction reversed. He need only show the erroneous denial of a challenge for cause. Robertson, supra; State v. Ross, 623 So.2d 643 (La.1993). Of course, the defendant must still comply at trial with LSA-C.Cr.P. Art. 800 (i.e., he must object to the trial court's denial of his challenge).

CHALLENGE OF MRS. WALKER
We first address this issue relating to the sufficiency of the defendant's objection to dismiss prospective juror, Mrs. Walker, in keeping with the state's application for rehearing. LSA-C.Cr.P. Art. 800 provides that a defendant may not assign as error a ruling refusing to sustain a challenge for cause unless an objection is made by him at the time of the ruling.
In this case, the record reflects that defense counsel first challenged Mrs. Walker based upon her misperceptions of the presumption of innocence and the defendant's right against self-incrimination. After rehabilitation, the court rejected the challenge on these grounds. Rather than objecting to the ruling, however, defense counsel urged another ground for a challenge for causethe relationship between the assistant district attorney and the juror. After some discussion, the court rejected this challenge for cause. Counsel for defendant made no further objection.
We find State v. Vanderpool, 493 So.2d 574 (La.1986), instructive. In Vanderpool, defense counsel twice challenged a juror who was a deputy sheriff for this same cause. After each challenge, counsel's motion was denied. However, counsel did not formally further object to either denial. The appellate court held that pursuant to LSA-C.Cr.P. Art. 800, this failure to object barred appellate review of the denials. The supreme court reversed on this issue. The supreme court pointed out that an objection need not be raised by incantation, citing La.C.Cr.P. Art. 841 and State v. Boutte, 384 So.2d 773 (La.1980). The court noted that it was sufficient that the party make known the action it desired or the objection to the action of the court, and the grounds therefor. The court further indicated that the objection requirement is not inflexible and went on to hold that the defendant "made it known he wanted the deputy sheriff excused and voiced the reasons why." Vanderpool, supra, 493 So.2d at 575. The court specifically said "this is sufficient to preserve the issue for appeal." Vanderpool, supra at 575.
The only distinction that we can discern between the instant case and Vanderpool is that in Vanderpool, the defendant twice asserted the same reason for challenging the juror. Counsel made no further formal objection after either denial. We are persuaded by Vanderpool that the objections raised by the instant defendant were sufficient to preserve the issue for appeal. We note that the language used by counsel in Vanderpool and here is similar. The fact that counsel in Vanderpool may have twice asserted the same grounds shouldn't make any difference. Just as in Vanderpool, counsel here made it known that he wanted the juror excused and voiced the reasons why.
Because we find that the defendant sufficiently objected to preserve the issue of dismissal of Mrs. Walker, our analysis next centers on whether or not defendant used all of his peremptory challenges.
Peremptory challenges in this case were not recited verbally; rather, they were written on slips of paper and handed to the trial judge. The challenges were not part of the original record on appeal. A document purporting to list the disposition of both challenges for cause and peremptory challenges was contained in the state's supplemental brief on rehearing. Because briefs do not form a part of the record, we issued an order supplementing the record with this evidence on September 7, 1994. Thus, with much difficulty and after our supplementation of the record, we have determined that defendant did, in fact, exhaust all of his peremptory challenges in this case.
*220 We must next address the issue of the denial of the defendant's challenge for cause of Mrs. Walker and expand the analysis included in our original opinion due to the difficulty we experienced in determining this juror's status. In our original opinion, we determined that the denial of defendant's challenge for cause of Mrs. Walker was in error and required reversal of defendant's conviction due to the juror's relationship with the assistant district attorney. Neither party indicated that Mrs. Walker did not serve on the jury which convicted defendant. It was only in the state's application for rehearing that this court was put on notice that this juror may not have served. Indeed, the record (R.487) indicates that the court noted "and therefore, the remaining persons who were called, Ms. Walker, Mr. Fields, and Mr. Huckaby, you have been excused because we do have a jury...." (Emphasis ours.) Further, the minutes reflect the jurors who served, and Walker is not listed therein.
At the time during the jury selection process when Ms. Walker was called from the venire, ten jury members had been selected. Therefore, only two jurors were needed in addition to one alternate. The trial judge requested that a panel of eight, five more than were actually necessary, be convened in order that the final two jurors and one alternate could be selected. The names of these jurors were called and they were seated as follows: Smith, Yelverton, Sprawls, Pruitt, Walker, Fields, and Mack. These eight jurors were questioned as to their qualifications. After questioning, the judge allowed challenges for cause on all eight jurors. At that time, Walker was challenged for cause, and this challenge was denied. Potential juror Mack, juror eight, was challenged for cause as well, and this challenge was granted. There remained seven potential jurors after these challenges for cause were utilized. The trial court then requested the exercise of peremptory challenges. The record is clear that the defendant had exercised all of his peremptory challenges prior to the seating of this panel of eight. The state of Louisiana utilized one peremptory challenge as to potential juror number one, Smith. Thereafter, Yelverton and Sprawls, potential jurors two and three, were selected to complete the jury of twelve. Pruitt, number four, was selected as the alternate. Walker, Fields, and Huckaby were released without serving on the jury.
Thus, while Mrs. Walker was questioned and challenged for cause, the jury was completed by the acceptance of three jurors preceding her in the panel for the remaining two juror and one alternate positions. The record therefore reveals that Walker did not serve on the jury and that the defendant had exercised all of his peremptory challenges prior to the selection of the final panel of eight. Since Walker did not serve on the jury because jury selection had been completed before she was reached, defendant could not have had an opportunity to peremptorily challenge her even if he had peremptory challenges remaining.
We note that we adhere to our original finding that the denial of the challenge for cause of Mrs. Walker was in error for the reasons expressed there. The issue now becomes whether these circumstances warrant reversal of defendant's conviction.
State v. Robertson, supra, is the latest Louisiana Supreme Court pronouncement on this issue. In Robertson, defendant exhausted all of his peremptory challenges, but complained that the trial court erred in denying a challenge for cause as to a potential juror. The juror indicated a belief that the death penalty was the only appropriate punishment for a first degree murder case involving a double murder (the circumstances of the case for which he was being questioned). The trial court denied defendant's challenge for cause based upon the potential juror's predisposition, and the defendant was forced to exercise a peremptory challenge to excuse the juror. The supreme court determined that the denial of the challenge for cause was in error and thereby deprived defendant of a peremptory challenge to a potential juror violating his constitutional rights. The court reviewed the statutory and jurisprudential law relating to this issue. In discussing the matter, the court noted that LSA-C.Cr.P. Art. 880 was amended in 1983 to provide that a defendant could now complain of a ruling to sustain a challenge for cause, even if he did not thereafter exercise all of his peremptory *221 challenges. The court further noted that the amendment to Art. 800 did not change the law regarding a defendant who has used all of his peremptory challenges. Citing prior jurisprudence, Robertson, supra, 630 So.2d at 1280, went on to state: "Prejudice is presumed when a challenge for cause is erroneously denied and all of defendant's peremptory challenges are exhausted. A trial court's erroneous ruling which deprives a defendant of a peremptory challenge substantially violates that defendant's rights."
We find a clear distinction between the facts of this case and Robertson. Unlike Robertson, Mrs. Walker never had a chance to serve on the jury due to the completion of the jury by the individuals preceding her in the jury panel. In Robertson, the wrongful denial of the challenge for cause mandated the exercise of a peremptory challenge by the defense to exclude the potential juror. This challenge, or a later challenge, exhausted the defendant's peremptory challenges. Therefore, if the challenge for cause had been correctly granted, the defense would have had an additional peremptory challenge available. Thus, defendant was denied a peremptory challenge in Robertson. In the present case, the erroneous challenge for cause did not have the same effect.
Clearly, defendant had exercised all of his peremptory challenges prior to the selection of this panel of eight. Additionally, even if the defendant had had any remaining peremptory challenges, he would not have had an opportunity to exercise them due both to the method of jury selection and the completion of the jury selection by individuals preceding Mrs. Walker. Inherent in the application of Robertson, we feel, is that either the erroneous juror served because defendant had no remaining peremptory challenges, or that a peremptory challenge was utilized to excuse the juror, thus depriving the defendant of a peremptory challenge. Such is not the case here, as the jury was completed individuals preceding Walker, even though the challenge for cause was erroneously denied. This is further illustrated in the case of State v. Ross, supra, in which the court stated: "When a defendant uses a peremptory challenge after a challenge for cause has been denied, the defendant must show: (1) The erroneous denial of the challenge for cause; and (2) use of all peremptory challenges." (Emphasis ours.) We cannot determine that any prejudice resulted under these facts. Consequently, any error in the denial of the challenge for cause is harmless.
In contrast to State v. Robertson, supra, and State v. Ross, supra, the trial court's erroneous ruling cannot be said to have deprived the defendant of a peremptory challenge which thereby substantially violated his rights. The error did not affect substantial rights of the accused. LSA-C.Cr.P. Art. 921. See Vanderpool, supra. We conclude, contrary to our original opinion, that this assignment of error lacks merit.

OTHER ASSIGNMENTS OF ERROR
Because we reverse our original opinion as it relates to Mrs. Walker, it is necessary that we address the remaining assignment of error originally briefed by defendant. Fairley originally asserted nine assignments of error. Only five are briefed. We necessarily dealt with the defendant's assignments concerning the sufficiency of the evidence and the constitutional invalidity of the statute under which he was convicted in our original opinion. We maintain our view that these assignments lack merit.
The four assignments which were not briefed are considered abandoned. State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App.2d Cir.1989), writ denied, 558 So.2d 1123 (La.1990); URCA Rule 2-12.4. Therefore, three assignments of error dealing with other prospective jurors remain for consideration.

CHALLENGE OF JUROR HARRIS
In Assignment of Error No. 6, defendant argues that the district court erred, as a matter of law, in refusing to grant a new trial after it was discovered during the polling of the jury that juror Jim Harris was not able to read or write and indicated that he did not understand the nature of the proceedings. The alleged factual basis for this claim is that juror Harris, when polled, had difficulty in responding to the attorney for defendant. Defendant asserts that Mr. Harris could not *222 distinguish a two-letter word from a three-letter word and, therefore, was not qualified to serve as a juror.
The issue of disqualification of a juror due to the inability to read or write has been addressed by this court. Where the evidence does not include written documents or where any documents used are read to the jury, lack of literacy is not of such significance so as to warrant mistrial. State v. Murphy, 465 So.2d 811 (La.App.2d Cir.1985). A defendant must be prejudiced by a juror's inability to read or write before a new trial will be granted. State v. Sharp, 338 So.2d 654 (La.1976); State v. Broussard, 532 So.2d 208 (La.App.3d Cir.1988).
In this case, written exhibits were read to the jury. There is no indication that any written evidence was examined by the jury during deliberation. Further, while Mr. Harris's response at the time of polling may have been the result of confusion, we cannot find that this response upon which defendant relied demonstrates an inability to read or write. The trial judge asked the prospective jurors, before trial, whether or not they were literate. No juror responded negatively. There is no evidence before us which can be said to negate this finding. This assignment lacks merit.

CHALLENGE OF JURORS MYERS AND BLEWER
Defendant asserted in his original appeal that the trial court erred in denying his challenge for cause based upon Juror Myers biological relationship to assistant district attorney Myers.
LSA-C.Cr.P. Art. 797(3) allows a challenge for cause where a relationship with the district attorney "is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict."
At trial juror Myers testified that he was first cousin to assistant district attorney Myers and admitted that he was utilizing assistant district attorney Fallin's law firm on another matter. Defense counsel did not explore this issue at all on voir dire. Juror Myers expressed some difficulty with the burden of proof as it relates to entrapment, and defendant initially challenged him for cause on this issue alone. After rehabilitation by the state, the court denied the challenge for cause based upon this issue of entrapment. Later in the proceedings, defendant once again challenged juror Myers for cause on the grounds of his relationship with the assistant district attorney. After a short rehabilitation by the state, the trial judge once again denied defendant's challenge for cause. Defendant asserts that the trial judge erred in denying his challenge for cause based upon his relationship with the assistant district attorney.
A trial court is vested with broad discretion in ruling on challenges for cause. The trial court's ruling will be reversed only when it appears, upon review of the voir dire as a whole, that the court's exercise of its discretion has been arbitrary or unreasonable, resulting in prejudice to the defendant. State v. McIntyre, 381 So.2d 408 (La.1980), cert. denied, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 90 (1980); State v. Johnson, 595 So.2d 789 (La.App.2d Cir.1992). The true test of a juror's qualification to serve is his or her ability to judge impartially based on the evidence adduced at trial, as gleaned from the totality of responses given at voir dire. State v. Smith, 430 So.2d 31 (La.1983); State v. Otis, 586 So.2d 595, 600 (La.App.2d Cir. 1991), writ granted in part on other grounds and denied in part, 589 So.2d 487 (La.1991).
In our original opinion, we expressed concern over the denial of the challenge for cause relating to prospective juror Myers. In the questioning of this juror, much like that of Mrs. Walker, the defense first challenged for cause on the grounds of the burden of proof relating to an entrapment defense. The initial challenge for cause was denied. Separately, the defendant challenged Myers for cause on the issue of his relationship with the assistant district attorney. Once again, however, the trial court questioned the juror, determined that the juror could be fair and impartial despite the relationship, and denied the challenge for cause. While we reiterate our concern, this record reveals nothing of the relationship between the juror and assistant district attorney *223 other than the fact that they were first cousins. There is no evidence relating to the closeness of this relationship, the extent, if any, of time spent together, or the general status of their kinship. Further, from the record before us, we cannot determine that assistant district attorney Myers actively participated in jury selection or the trial and appears to have assisted assistant district attorney Fallin only in the nature of being seated with him at the counsel table. We also recognize that in light of the nature of the location of the trial, it is very common for individuals to be related and/or to secure the legal services of local attorneys. In light of these factors, along with the lack of information elicited relevant to the nature of the relationship between the cousins and the broad discretion granted to the trial court in these matters, we cannot determine that the denial of this challenge for cause was in error.
Juror Robert Blewer indicated in voir dire that the defense "would have to prove that the defendant was innocent." However, he also indicated that he would follow the court's instructions. Defendant challenged the juror for cause based upon the burden of proof and answers dealing with entrapment. The court ruled that juror Blewer could render an impartial verdict and denied the challenge. Defendant argues error in this ruling. We find no merit to defendant's complaint as it relates to juror Blewer. While Mr. Blewer volunteered his opinion in this matter, upon further instruction and inquiry by the court, he demonstrated a willingness and ability to decide the case impartially according to the law and evidence. Thus, we cannot find that the trial court abused its discretion.

CHALLENGE OF JUROR DOYLE
In Assignment of Error No. 8, defendant asserts that the trial court erred in excusing for cause Jacqueline Doyle in accord with the state of Louisiana's request. Upon examination, Ms. Doyle indicated that she worked with the defendant and could not be impartial in her determination as a juror. The state challenged Doyle for cause and the trial court granted the challenge. Defendant contests this ruling with no authority or argument. We find no error in the trial court's ruling. A trial court does not abuse its discretion in excusing a juror for cause where the juror is not inclined to accept the reasonable doubt standard as instructed by the court. State v. Hall, 549 So.2d 373 (La. App.2d Cir.1989), writ denied, 556 So.2d 1259 (La.1990). Ms. Doyle stated that she could not follow the law. The trial court was in a position to best determine whether or not she could do so. Further, as the record reflects that the state only used ten of its twelve peremptory challenges, defendant cannot complain of this ruling even if it was erroneous. LSA-C.Cr.P. Art. 800(B); State v. Essex, 618 So.2d 659 (La.App.2d Cir.1993). This assignment of error lacks merit.

CONCLUSION
Having determined upon rehearing that none of defendant's assignments of error have merit, we now affirm the defendant's conviction and sentence.
AFFIRMED.
NORRIS, J., concurs with written reasons.
WILLIAMS, J., concurs for the reasons assigned by NORRIS, J.
NORRIS, Judge, concurring.
Under the particular facts of this case I concur. This defendant was not deprived of a peremptory challenge as a result of the erroneous ruling on the challenge for cause; he had already exhausted his peremptory challenges. State v. Ross, 623 So.2d 643, 644 (La.1993). Furthermore, the prospective juror at issue did not serve on the jury.